# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PANAMA CITY DIVISION

EVANSTON INSURANCE COMPANY,

       Plaintiff,

v.                                      CASE NO.  5:07cv34-RH/MD

ROYAL AMERICAN CONSTRUCTION
COMPANY, INC., etc., et al.,

       Defendants.

_____/

## ORDER DENYING FIRST SUMMARY JUDGMENT MOTION

This action presents the issue whether, under Florida law, a liability insurer must defend its insured in an underlying lawsuit in which (1) the initial complaint against the insured does not explicitly allege any claim covered by the policy, (2) the parties to the underlying lawsuit nonetheless construe the complaint to include covered claims, (3) the parties actively undertake discovery on the covered claims, and (4) a plaintiff moves for leave to amend to set forth the covered claims explicitly.  I hold that there is a duty to defend under these circumstances.

I

Beginning in 2002, Royal American Construction Company, Inc. ("Royal")
performed concrete work as a subcontractor on a wastewater treatment plant in
Helena, Alabama.  The general contractor was Jerry Morrison Company, Inc.
("Morrison").

In 2003 Royal brought an action against Morrison and its surety, defendant
Fidelity and Deposit Company of Maryland ("Fidelity"), in Alabama state court
alleging that Royal had substantially completed the job but that Morrison had
wrongfully refused to pay amounts that were due.

In 2004 Morrison and Fidelity filed separate counterclaims against Royal.
Fidelity's counterclaim was only for breach of contract — Royal's alleged failure
properly to perform its obligations under the subcontract.  Morrison's counterclaim
included a similar breach of contract count and also alleged counts for breach of
warranty, negligence, and misrepresentation.

The negligence count asserted that Morrison "sustained the damages"
identified in the breach of contract count.  Morrison Counterclaim ¶32 (document
1-4 at 8).  Those were damages for "the correction of defective and nonconforming
workmanship, delays in the construction of the Project, and . . . to complete those
portions of the [subcontract] which were by its terms and conditions the obligation
of Royal."  Morrison Counterclaim ¶28 (document 1-4 at 6).  The negligence count

further demanded:

> damages for providing defective and nonconforming workmanship,
> damages for delays in the construction project, damages for failing
> and refusing to correct and complete subcontract work, liquidated
> damages, the costs of completing those portions of the [subcontract]
> which were the obligation of Royal, lost profits, interest, attorney fees,
> and such other relief to which [Morrison] may be entitled."

Morrison Counterclaim, "Wherefore" clause following ¶32 (document 1-4 at 8).

Royal demanded a defense of the Morrison counterclaim from Evanston

Insurance Company ("Evanston"), which had issued a commercial general liability

policy to Royal. Royal did not demand a defense of the Fidelity counterclaim,

apparently acknowledging that the Fidelity counterclaim asserted no covered

claim.

Evanston agreed to pay half of Royal's attorney's fees in the Alabama

litigation. Royal's original attorney continued to handle the case. One reason for

Evanston's payment of half, rather than all, of Royal's fees was that some of the

fees were attributable to Royal's claim against Morrison and Fidelity, rather than to

defense of the claims against Royal.

Evanston's agreement to pay was accompanied by a reservation of rights set

forth in a long letter that was not in all respects internally consistent. The letter

said "Evanston's position" was that the negligence count was "covered." Letter of

October 15, 2004 (document 50-3) at 1. But the letter also referred to the

possibility that it would later be "determined" that there was no coverage at all.  *Id.*

at 11.  And the letter said Evanston reserved the right "to collect back payments for

uncovered expenses or indemnity."  *Id*. at 11.

Evanston paid its half of Royal's fees through more than two years of

litigation in the Alabama state court.  Although the counterclaims included no

specific reference to any damages other than the need to complete, repair, or

replace Royal's defective work, Morrison and Fidelity asserted all along, or at least

for a substantial period, that Royal's deficient performance also damaged other

property at the wastewater treatment plant site.  The parties pursued discovery on

these assertions.  Examples included the assertion that Royal negligently placed up

to 13 feet of concrete in a drainage pipe and negligently allowed concrete finishing

compound overspray to attach to equipment and piping throughout the project,

requiring its removal.[1]

In February 2007, well before the scheduled trial, Evanston sent Royal

---

[1] As set forth ahead, the case at bar is before the court on a motion for
summary judgment.  The record must be viewed in the light most favorable to the
nonmoving parties, and all reasonable inferences must be drawn in their favor.
The description in the text of the assertions that were actually litigated in the
Alabama case is a fair inference from the record in the case at bar.  For summary
judgment purposes, I accept the inference as true.  Before the case at bar is finally
resolved — either on a further summary judgment motion or after trial — more
definitive evidence will be required showing that these issues were indeed litigated
in the Alabama case.

another letter, disclaiming any obligation to defend the litigation.  Evanston

indicated it would continue to pay half of Royal's fees until a court determined

Evanston had no duty to defend the litigation.  But Evanston also indicated it

would seek to recover back from Royal any payment for fees going forward from

the date of the new letter — not for the period between October 2004 and February

2007 — in the event a court agreed that Evanston had no duty to defend.

Also in February 2007, Evanston filed the case at bar seeking a declaration

that it had no duty to defend or to indemnify Royal in the Alabama lawsuit.

Evanston named as defendants all of the parties to the Alabama litigation:  Royal,

Morrison, and Fidelity.  On October 2, 2007, Evanston moved for summary

judgment.  On October 11, 2007, shortly before its response to the summary

judgment motion was due in this court, Fidelity filed a motion in the Alabama case

for leave to amend its counterclaim to add a negligence count.  The new count

included specific references to the negligent filling of a pipe with concrete and

negligent application of overspray.

The motion for leave to amend remains pending in the Alabama court.

Acknowledging that the new claim comes as no surprise, Royal apparently intends

to consent to the granting of leave to amend.

The motion for summary judgment in this court is fully briefed, has been

orally argued, and is ripe for decision.

### III

Evanston issued its policy to Royal in Florida.  As all parties agree, Florida law governs the coverage dispute.  *See, e.g., Travelers Indem. Co. v. PCR Inc.*, 326 F.3d 1190, 1193 (11th Cir. 2003); *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1186 (11th Cir. 2002).

The parties have joined issue with considerable vigor on the law of Florida and the meaning and proper application of the commercial general liability policy and its various exclusions.  Ultimately, though, the proper meaning and application of the policy is clear, at least in respects that matter.  As all parties seem to agree, at least for purposes of the pending summary judgment motion:

(1)  the policy does *not* impose a duty to defend or indemnify claims for breach of contract of the kind asserted in the counterclaims;

(2)  the policy does *not* impose a duty to defend or indemnify claims for misrepresentation or breach of warranty of the kind asserted in the Morrison counterclaim;

(3) the policy does *not* impose a duty to defend or indemnify a claim for negligence in performing the subcontract if the only alleged damage is the need to complete, replace, or repair Royal's own work; and

(4) the policy *does* impose a duty to defend and possibly to indemnify a claim for negligence in performing the subcontract if the alleged damages include physical injury to other property, not just the need to complete, replace, or repair Royal's own work.

The essential point of disagreement, then, is not over the meaning of the policy, but over the scope of the claims in the underlying lawsuit.

## IV

Florida courts have emphasized time and again that an insurer's duty to defend is governed by the terms of the insurance policy and the allegations of the complaint.  *See, e.g., Hartford Acc. and Indem. Co. v. Beaver*, 466 F.3d 1289, 1292 (11th Cir. 2006) (collecting cases).  "This is sometimes denominated the 'eight corners rule,' a reference to the relevant inquiry's focus on the four corners of the policy and the four corners of the complaint."  *Colony Ins. Co. v. Barnes*, 410 F. Supp. 2d 1137, 1139 (N.D. Fla. 2005) (collecting cases).

The applicable canons of construction run in favor of the insured.  This is true when construing the policy:  "Ambiguous policy provisions are interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy."  *Auto-Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla. 2000) (citing *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So.2d 1072, 1076 (Fla.

1998)).  And this is also true when construing the underlying complaint:  "If the allegations of the complaint leave any doubt regarding the duty to defend, the question must be resolved in favor of the insured requiring the insurer to defend." *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 814 (Fla. 1st DCA 1985).  Thus if a complaint (or, as in the case at bar, a counterclaim) alleges claims that *may* come within the policy's coverage, there is a duty to defend.

The only claim in the original counterclaims against Royal that may come within the policy's coverage is the Morrison counterclaim negligence count.  On its face that count appears to allege no injury other than the need to complete, repair, or replace Royal's own work.  The policy provides no coverage for such a claim.

Read in context, however, the negligence count apparently is broader, encompassing not only damages based on the need to complete, repair, or replace Royal's own work, but including also claims for injury to other property.  That is how the parties to the Alabama litigation apparently have read the count, and it is how Evanston itself apparently read the count when it wrote its October 2004 reservation of rights letter.[2]

 Moreover, the "eight corners rule" does not relieve an insurer of the duty to defend if a complaint's initially-uncovered allegations are expanded — through

---

[2] The text twice says "apparently" because this record is far from clear.  *See* supra note 1.

formal amendment or even through the parties' explicit or implicit construction of

the existing complaint — to include covered claims.

The first Florida case adopting this principle apparently was *C. A. Fielland,*

*Inc. v. Fidelity & Cas. Co.*, 297 So.2d 122 (Fla. 2d DCA 1974).  That case, like the

case at bar, arose from allegedly defective construction work.  The insured,

Fielland, participated in the construction of an office building.  When the brick

veneer wall began to collapse, Fielland was sued.  Fielland's insurer refused to

defend.  Both the trial and appellate courts held — consistent with my ruling and

the parties' agreement in the case at bar — that the policy did not cover claims for

repair of Fielland's own work, that is, for damage to the building itself, but that the

policy did cover claims for damage to other property.  The appellate court,

speaking through Judge (later Florida Supreme Court Justice) Grimes, said:

> The duty to defend, in the first instance, is determined from the
> allegations of the complaint. . . .  Yet, *if it later becomes apparent that*
> *claims not originally within the scope of the pleadings are being made*
> *which are within the insurance coverage, the insurance carrier upon*
> *notification would then become obligated to defend.*  St. Paul Fire &
> Marine Insurance Co. v. Hodor, Fla. App. 3rd, 1967, 200 So.2d 205;
> *cf.* Sussman v. American Surety Company of New York (CA 5, 1965),
> 345 F.2d 679.  Since the theory of pleading in state courts of Florida is
> now much like that of the Federal courts, the following comment in
> Milliken v. Fidelity and Casualty Company of New York (CA 10,
> 1964), 338 F.2d 35, is pertinent:
>
> > "This court has consistently held that as a general rule the duty
> > of an insurer to defend its insured in federal court litigation is

> determined in the beginning of the litigation by the coverage
> afforded by the policy, as compared with the allegations of the
> complaint filed in the action.  But, the allegations of the
> complaint are not conclusive on the issue.  The duty to defend
> may attach at some later stage of the litigation if the issues of
> the case are so changed or enlarged as to come within the policy
> coverage. The reason for this rule is that '. . . [u]nder the
> Federal Rules of Civil Procedure the dimensions of a lawsuit
> are not determined by the pleadings because the pleadings are
> not a rigid and unchangeable blueprint of the rights of the
> parties. * * * '  Thus, the insurer's duty to defend an action
> brought in federal court against its insured may arise or attach
> at any stage in the litigation. . . ."

*Fielland*, 297 So.2d at 127 (emphasis added).

To the same effect is *Broward Marine, Inc. v. Aetna Ins. Co.*, 459 So.2d 330, 330-31 (Fla. 4th DCA 1984).  The insured built a boat in 1972 and repaired it in 1974.  The boat burned to the waterline in 1976.  The owner sued the insured, alleging defects in the 1972 construction.  Like the breach of contract claims in the case at bar, the construction defect claim was not covered.  Midway through the lawsuit, however, it became obvious that the owner also was claiming negligence with respect to the 1974 repairs.  The negligent repair claim was not pled, but the Fourth District Court of Appeal nonetheless held that the insurer had a duty to defend, citing *Fielland*.  Quoting the insured, the court said that allowing the broader claim to go forward against the insured in the underlying litigation, while allowing the insurer to avoid its duty to defend in reliance on the narrower

allegations actually set forth in the pleading, would result in the insured being

"beaten with both ends of the same stick." *Broward Marine*, 459 So.2d at 331.

The metaphor is equally applicable in the case at bar. Royal is defending

litigation in Alabama asserting, among other things, that its negligence caused

damage to other property. Evanston is asserting here that the actual pleadings in

Alabama should be read more narrowly, regardless of the claim actually being

pursued. If held liable in Alabama on a covered claim, but precluded from

obtaining a defense or indemnity on the ground that the claim was not pled, Royal

would be "beaten with both ends of the same stick."

The principle embraced in *Fielland* and *Broward Marine* is what keeps that

from happening. No court has questioned the continuing validity of these

decisions.

To be sure, there is some tension between the *Fielland* and *Broward Marine*

analysis and the commonplace — often inflexible — statement that the duty to

defend must be determined based solely on the insurance policy and the allegations

of the complaint. The emphasis on the terms of the complaint, however, is almost

always as a corollary to the rule that the complaint's allegations must be accepted

as true for the purpose of determining the duty to defend. *See, e.g., Colony*, 410 F.

Supp. 2d at 1139 & n.3. Thus the insurer must defend covered allegations even if,

in fact, they are untrue.  *See id*.  And when a material allegation negates coverage,

there is no duty to defend, even if the allegation is untrue.  *See, e.g., Federal Ins.*

*Co. v. Applestein*, 377 So.2d 229 (Fla. 3d DCA 1979)

      The case at bar, like *Fielland* and *Broward Marine*, is different.  Here the

conflict is not between the allegations and the actual facts, but between two sets of

allegations.  The issue is not whether the duty to defend is controlled by the

allegations or the actual facts; it is clear the duty is controlled by the allegations.

The issue, instead, is which set of allegations controls — a narrower set explicitly

included in the pleadings, or a broader set actively being pursued in the litigation.

The answer, as *Fielland* and *Broward Marine* make clear, is that the insurer must

defend if it has notice that covered claims are included among those actually being

litigated.  Evanston has cited no case to the contrary.

      To be sure, Evanston has cited decisions it says should be followed instead

of *Fielland*.  In a supplemental memorandum filed as this order was in final

proofreading, Evanston cited two cases that deserve mention.  First, in *Federal Ins.*

*Co. v. Applestein*, 377 So.2d 229 (Fla. 3d DCA 1979), an insurer sought to avoid

its duty to defend on the ground that the *actual facts* were contrary to the

complaint's allegations.  The court refused to consider the actual facts, invoking

the settled Florida principle that the allegations, not the actual facts, control the

duty to defend.  The court correctly noted that the *Fielland* principle, which allows a court to consider expanded allegations but not actual facts, was inapplicable. *Applestein*, 377 So. 2d at 232-33.

Second, in *Florida Farm Bureau Mut. Ins. Co. v. James*, 608 So.2d 931 (Fla. 4th DCA 1992), an insurer refused to defend an action in which the complaint alleged no covered claim.  The litigation was expanded to include covered claims — just as in *Fielland* and *Broward Marine* — but the insurer was not notified. After the litigation was concluded, the insured sued the insurer for breach of the duty to defend.  Relying on the absence of notice, the court ruled for the insurer. The decision does not help Evanston, because Evanston, unlike Florida Farm Bureau, had timely notice of the expanded allegations.[3]

## V

The claims actually being litigated in Alabama state court — at least on the view of the record in the case at bar most favorable to the nonmoving parties — include not only allegations of breach of contract and a need to complete, repair, or replace Royal's own work, but also allegations of negligent damage to other

---

[3] That Evanston had timely notice must be taken as true for summary judgment purposes, because this is a reasonable inference from the record.  Even more clearly, the record does not establish the *absence* of notice.  For summary judgment purposes, this is sufficient to require application of the *Fielland* and *Broward Marine* principle.

property.  The parties have so construed Morrison's counterclaim, and Fidelity has

moved for leave to amend its counterclaim to explicitly set forth such a claim.

Evanston's policy covers claims of negligent damage to other property, as

Evanston seems to concede.  Under Florida law, if a party asserts any covered

claim against an insured, the insurer must defend all of the party's claims against

the insured.  Evanston is not entitled to summary judgment declaring the absence

of a duty to defend Royal in the Alabama litigation.

For these reasons,

IT IS ORDERED:

Plaintiff's motion for summary judgment (document 52) is DENIED.

SO ORDERED this 29th day of November, 2007.

s/Robert L. Hinkle
Chief United States District Judge